UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN ALONZO PHLEGM,

      Petitioner,

v.                            CASE NO. 12-10238
                                 HONORABLE JOHN CORBETT O'MEARA

MARY BERGHUIS,

      Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Jonathan Alonzo Phlegm has filed a *pro se* habeas corpus petition challenging his state convictions for first-degree murder and several related offenses. The habeas petition alleges that (1) Petitioner's trial attorney was ineffective for failing to request a jury instruction on accomplices, (2) the state trial court erred by denying Petitioner's motion for appointment of an expert witness on identification, (3) there was insufficient evidence at trial to support some of the convictions, and (4) the prosecutor made an improper rebuttal argument regarding consciousness of guilt.  Respondent Mary Berghuis argues in an answer to the petition that Petitioner's fourth claim is procedurally defaulted and that his other claims lack merit. The Court agrees that none of Petitioner's claims warrant habeas relief.  Accordingly, the habeas petition will be denied.

**I. Background**

      The prosecutor for Oakland County, Michigan charged Petitioner with twenty-two

felony counts, including:  two counts of first-degree felony murder, Mich. Comp. Laws §

750.316(1)(b); two counts of first-degree premeditated murder, Mich. Comp. Laws §

750.316(1)(a)[1]; two counts of assault with intent to rob while armed, Mich. Comp. Laws

§ 750.89; one count of first-degree criminal sexual conduct, Mich. Comp. Laws §

750.520b; one count of conspiracy to commit armed robbery, Mich. Comp. Laws §

750.157a, Mich. Comp. Laws § 750.529; one count of first-degree home invasion, Mich.

Comp. Laws § 750.110a(2); two counts of unlawful imprisonment, Mich. Comp. Laws §

750.349b; and eleven counts of possessing a firearm during the commission of a felony

(felony firearm), Mich. Comp. Laws § 750.227b.  Petitioner was tried in Oakland County

Circuit Court with his two co-defendants, Steven Bard and Charles Smith, but each

defendant had his own jury.  The evidence at trial established that

> during the early morning hours of June 5, 2007, all three defendants broke
> into a house in Pontiac where Cleveland Brown, a member of a gang
> known as the "A-Team," and Maurice Threlkeld, a known drug dealer, both
> lived.  Only Brown and his girlfriend were present at the time of the
> break-in, but Threlkeld returned home while defendants were inside the
> house.  Defendant Smith sexually assaulted Brown's girlfriend.  The house
> was ransacked, and Threlkeld and Brown were forcibly removed from the
> house.  On June 6, the bodies of Threlkeld and Brown were found in
> Brown's Chevrolet Suburban vehicle, which was parked on the I-75
> service drive [near Seven Mile Road in Detroit].  Threlkeld and Brown both
> died from gunshot wounds.
>
> The sexual assault victim identified defendant Bard in a
> photographic lineup and identified defendant Phlegm in a corporeal lineup
> as individuals who participated in the crimes.  Although she was unable to
> identify the person who sexually assaulted her, defendant Smith's DNA
> matched DNA obtained from the victim during a sexual assault
> examination and from a condom found in the bedroom where the assault

---

[1]  There were two murder victims, but the prosecutor maintained that Petitioner
premeditated the murders and also committed the murders during the commission of
another felony.

took place.  Other individuals, including Johnny Hodges, a member of the same gang as defendants Bard and Phlegm, were excluded as a possible source of the DNA evidence.

At trial, Hodges testified that he provided false information to law enforcement officers when he was initially questioned during the police investigation, but later decided to come forward and testify for the prosecution because of his friendship with Threlkeld.  He claimed that he was affiliated with defendants Bard and Phlegm through their membership in a Pontiac gang known as the North World Org or North World Order ("NWO"), and that other gang members, including defendant Bard, introduced him to defendant Smith.  Hodges testified that he had contact with each defendant on June 5, 2007.  . . .  He also testified regarding a NWO gang meeting that all three defendants attended later in the day on June 5, at which attendees were directed to search for members of the "A-Team" gang, who were reportedly responsible for abducting defendant Bard's brother.  Hodges testified that his involvement in the events surrounding Brown and Threlkeld was limited to getting rid of the guns used in the crimes.

*People v. Phlegm*, No. 288622, 2010 WL 2696678, at *1 - *2 (Mich. Ct. App. July 8, 2010).

There was additional evidence that, on the afternoon of June 5, 2007, Brown's sister saw Petitioner and Bard in a white car in Pontiac.  Petitioner got out of the car and said something about killing people and having sex with their women.  (Trial Tr. Vol. VI, 88-90, 99, 105-07, Aug. 7, 2008.)  Later that evening, she saw Petitioner, Bard, and a third person at a fast food restaurant.  Petitioner was waving a gun. (*Id.* at 110-12, 122, 124.)

Edmund Stewart testified that, on or about July 15, 2007, he was arrested for driving on a suspended license.  On July 24, 2007, he was brought to the Pontiac district court, where he was placed in a holding cell.  While there, he encountered Petitioner and Bard.  Bard was talking about how he "[b]ust in the crib, set 'em out on the floor . . . and screwed [the] girl."  Petitioner, meanwhile, was saying how they bust

3

through the door, made the people lie on the floor, did what they had to do, and took

care of them.  According to Stewart, Petitioner also said that the men were shot and got

what they deserved. (Trial Tr. Vol. VII, 166-70, 178-79, 201, 203, Aug. 8, 2008.)

Stewart claimed that he received nothing in exchange for his testimony.  (*Id.* at 224.)

David Phillips testified that he was arrested in 2007 on an unrelated charge and

sent to Oakland County Jail.  While he was there, he talked with Petitioner, who

informed him that he (Petitioner) had sold some drugs to Threlkeld and Brown and that

Threlkeld and Brown were killed because Threlkeld had not paid him.  Petitioner also

informed Phillips that the men were taken out of the house.  Petitioner insinuated that

he was involved in the murder of Threlkeld and Brown, and he admitted to Phillips that

he shot two or three people and threw away his pistol before being arrested.

Furthermore, while the trial was ongoing, Petitioner asked Phillips four times not to

testify.  (Trial Tr. Vol. XI (a.m. session), 6-7, 14-17, 50-52, 55, Aug. 14, 2008.)  Phillips

admitted that a gun charge against him was dismissed as part of his plea agreement

with the prosecutor and in exchange for his testimony against Petitioner.  (*Id.* at 18-19,

30.)

Petitioner did not testify, and his only witness was Oakland County Deputy

Sheriff James Lambert, who testified that, on July 24, 2007, Petitioner, Bard, and

Edmund Stewart were temporarily held at the Pontiac district court.  According to

Lambert, Stewart would not have been in a position to see Petitioner or Bard in the

detention cells.  (Trial Tr. Vol. XII, 122, 128-31, Aug. 15, 2008.)

Petitioner's defense was that the prosecutor failed to prove all the elements of

the crimes and failed to show that Petitioner committed the crimes.  Defense counsel

4

argued that the criminal assault victim misidentified Petitioner, that Edmund Stewart was not entirely truthful, and that David Phillips worked out a deal for his testimony.

On August 21, 2008, Petitioner's jury found him guilty, as charged, of four counts of first-degree murder (under two theories), two counts of assault with intent to rob while armed, one count of first-degree criminal sexual conduct (on an aiding and abetting theory), one count of conspiracy to commit armed robbery, one count of first-degree home invasion, two counts of unlawful imprisonment, and eleven counts of felony firearm. At the sentencing on September 9, 2008, the trial court vacated two of the murder convictions on double jeopardy grounds. The court then sentenced Petitioner to two years in prison for the felony firearm convictions, followed by concurrent terms of life imprisonment for the murder convictions, twenty to thirty years for the home-invasion conviction, sixty to ninety months for the unlawful-imprisonment convictions, and thirty-four years, eight months to ninety years for the assault-with-intent-to-rob convictions, the sexual-assault conviction, and the conspiracy conviction.

Petitioner raised his habeas claims on appeal from his convictions. The Michigan Court of Appeals affirmed his convictions, but remanded his case for correction of the judgment of sentence to show that Petitioner stood convicted of only nine counts of felony firearm after two of his four murder convictions were vacated. *See Phlegm*, 2010 WL 2696678. On February 7, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Phlegm*, 488 Mich. 1039; 793 N.W.2d 705 (2011) (table). On January 19, 2012, Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254. Although he did not file a supporting brief, he adopts by reference his state appellate brief.

5

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

6

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

## III.  Analysis

### A.  Trial Counsel

Petitioner alleges that his trial attorney was ineffective for failing to request a jury instruction on accomplice testimony.  The alleged accomplice was Johnny Hodges, a key prosecution witness.  Petitioner claims that Hodges was an admitted accessory after the fact, because he testified that he assisted in disposing of the weapons used in the crimes (Trial Tr. Vol. IX, 63-65, 91-92, Aug. 12, 2008) and that he let defendants Smith and Bard hide in his parents' home when the police arrived at the house (*id.* at 36, 94).  Petitioner asserts that a cautionary instruction on accomplice testimony would have added teeth to defense counsel's argument that Hodges got rid of evidence and was not credible.  (Trial Tr. Vol. XIII, 72-74, Aug. 19, 2008.)

### 1.  Clearly Established Supreme Court Law

7

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation [of attorney performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's

8

actions were reasonable.  The question is whether there is any reasonable argument

that counsel satisfied *Strickland's* deferential standard."  *Id.*

### 2. Application

The Michigan model jury instruction on accomplice testimony reads:

(1) You should examine an accomplice's testimony closely and be very careful about accepting it.

(2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable.  However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3) When you decide whether you believe an accomplice, consider the following:

    (a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

    (b) Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony?

    (c) Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

    [(d) Does the accomplice have a criminal record?]

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness.  You should be sure you have examined it closely before you base a conviction on it.

Mich. Crim. JI 5.6 (1991).

Petitioner claims that, if the trial court had read this instruction to his jury, the jury

might not have believed Johnny Hodges' testimony, and the outcome of the trial might

9

have been different.  The Michigan Court of Appeals, however, noted that "[a]n

accomplice is a 'person who knowingly and willingly helps or cooperates with someone

else in committing a crime,' " and that "an accessory after the fact does not participate in

the principal offense."  *Phlegm*, 2010 WL 2696678, at *3 (quoting *People v. Allen*, 201

Mich. App. 98, 105; 505 N.W.2d 869, 873 (1993)).  The Court of Appeals stated that a

jury instruction on accomplice testimony would have been inappropriate in Petitioner's

case because there was no evidence that Hodges participated in the charged offense.

The state court's interpretation of state law binds this Court sitting in habeas

corpus.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Israfil v. Russell*, 276

F.3d 768, 771-72 (6th Cir. 2001) (stating that, "[b]ecause state courts are the final

authority on state law, federal courts must accept a state court's interpretation of its

statutes and its rules of practice") (internal citation omitted)).  And because Hodges'

conduct did not meet the definition of an accomplice, the Michigan Court of Appeals

reasonably determined that Petitioner's attorney was not ineffective for failing to request

a jury instruction on accomplice testimony.  "Omitting meritless arguments is neither

professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th

Cir.), *cert. denied*, 134 S. Ct. 513 (2013).

Even if defense counsel's failure to request a jury instruction on accomplice

testimony amounted to deficient performance, Petitioner has failed to show that his

attorney's deficient performance prejudiced the defense.  The sexual assault victim

identified Petitioner as the man who tied her hands before she was raped.  (Trial Tr. Vol.

V, 111-13, Aug. 5, 2008.)  There was additional evidence linking Petitioner to the other

crimes, and the trial court instructed the jurors on how to evaluate the witnesses'

10

testimony.  The court specifically charged the jurors that, when deciding which testimony to believe, they should consider whether the witness was biased, prejudiced, or personally interested in how the case was decided.  The court also stated that the jurors should consider whether the witness had any special reason to tell the truth or to lie and that, if they thought the witness lied about something important, they could choose not to accept anything that the witness said or simply accept the part that they thought was true and ignore the rest.  (Trial Tr. Vol. XIII, 96-98, Aug. 19, 2008.)

If light of these instructions and the strength of the evidence against Petitioner without Hodges' testimony, there is not a reasonable probability that the result of the trial would have been different if defense counsel had successfully moved for a jury instruction on accomplice testimony.  Thus, Petitioner has failed to show that counsel's allegedly deficient performance prejudiced his defense.

The state court's finding that defense counsel was effective was not contrary to, or an unreasonable application of, *Strickland*.  Petitioner therefore has no right to habeas relief on the basis of his claim about trial counsel.

### B.  Denial of an Expert Witness

Petitioner alleges next that the state trial court erred by denying his pretrial motion to appoint at public expense an expert witness on identification.  According to Petitioner, a defense expert witness could have explained that:  stress has a negative impact on eyewitness identification; lineups are inherently suggestive; even a confident eyewitness can be mistaken in her identification; and various psychological phenomena are involved in eyewitness identifications.  The state trial court denied Petitioner's request for appointment of an expert witness on the basis that the issue was one of

11

credibility, not misidentification.  (Mot. Hr'g, 22, June 4, 2008).  The Michigan Court of

Appeals subsequently ruled that the trial court did not abuse its discretion in finding that

Petitioner failed to demonstrate the need for an expert witness on identification.

The Supreme Court has held that, "when a defendant demonstrates to the trial

judge that his sanity at the time of the offense is to be a significant factor at trial, the

State must, at a minimum, assure the defendant access to a competent psychiatrist who

will conduct an appropriate examination and assist in evaluation, preparation, and

presentation of the defense."  *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985).  "[T]he

Supreme Court has not yet extended *Ake* to non-psychiatric experts."  *Conklin v.

Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004).  And the Federal Court of Appeals for

the Sixth Circuit has stated that "a habeas petitioner does not have a constitutional right

to the presentation of expert testimony on the reliability of eyewitness identification."

*Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001).  To the extent Petitioner argues that

the trial court violated state law, his claim "is not appropriate for habeas review,"

because the Court "may not issue a writ of habeas corpus 'on the basis of a perceived

error of state law.' "  *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (quoting

*Pulley v. Harris*, 465 U.S. 37, 41 (1984)), *cert. denied sub nom Moreland v. Robinson*,

134 S. Ct. 110 (2013).

Furthermore, Petitioner had other means of challenging the criminal assault

victim's identification of him.  For example, defense counsel asked the criminal assault

victim whether she had talked to other people or seen newscasts about the crimes.

(Trial Tr. Vol. V, 176-78, 197, Aug. 5, 2008.)  Defense counsel also was successful in

getting the victim to admit that:  (1) she told a former boyfriend that she did not see

12

anything at one point during the assault on her because she had a pillowcase over her head (*id.* at 197-98); (2) she testified at the preliminary examination that the lights were turned off during the rape and that it was dark (*id.* at 204); and (3) she was not sure at trial whether Petitioner was in the bedroom when she was raped (*id.* at 193-94).

Cross-examination of the criminal assault victim "afforded the jury an adequate opportunity to assess the reliability of her identification of [Petitioner]." *Moore v. Tate*, 882 F.2d 1107, 1111 (6th Cir. 1989). While a defense expert witness "may well have given the jurors another perspective from which to assess [the victim's] testimony," this perspective was not constitutionally required. *Id.*

The Court therefore concludes that the trial court's denial of Petitioner's motion for appointment of an expert witness on identification did not deprive Petitioner of a constitutional right. Consequently, he is not entitled to relief on the basis of his second claim.

## C. Sufficiency of the Evidence

The third habeas claim alleges that the evidence at trial was insufficient to support Petitioner's conviction for conspiracy to commit armed robbery and the related felony-firearm conviction. Petitioner claims that there was no evidence of any agreement to use guns to rob Threlkeld and Brown. The Michigan Court of Appeals disagreed and concluded that the evidence was sufficient to support Petitioner's conspiracy conviction and the associated felony-firearm conviction.

### 1. Clearly Established Federal Law

"A defendant challenging the sufficiency of the evidence 'bears a very heavy burden.' " *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quoting *United*

13

*States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994)).  The critical inquiry on review of

the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt
> beyond a reasonable doubt.  But this inquiry does not require a court to
> "ask itself whether *it* believes that the evidence at the trial established guilt
> beyond a reasonable doubt."  Instead, the relevant question is whether,
> after viewing the evidence in the light most favorable to the prosecution,
> *any* rational trier of fact could have found the essential elements of the
> crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted)

(emphases in original).  "[C]ircumstantial evidence alone can sustain a guilty verdict and

. . . need *not* remove every reasonable hypothesis except that of guilt."  *United States v.*

*Stone*, 748 F.2d 361, 362 (6th Cir. 1984) (emphasis in original).

   "Two layers of deference apply to habeas claims challenging evidentiary

sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.*

*Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)).  First, the Court "must determine

whether, viewing the trial testimony and exhibits in the light most favorable to the

prosecution, *any rational trier of fact* could have found the essential elements of the

crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at

319) (emphasis in original).  Second, even if the Court were "to conclude that a rational

trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on

habeas review, [the Court] must still defer to the *state appellate court's* sufficiency

determination as long as it is not unreasonable."  *Id.* (emphases in original).

## 2.  Application

   The *Jackson* standard must be applied "with explicit reference to the substantive

elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.

14

16.  In Michigan,

> [t]he essence of a criminal conspiracy is an unlawful agreement. *People v. Justice (After Remand)*, 454 Mich. 334, 345; 562 NW2d 652 (1997). The crime requires both an intent to combine with others and an intent to accomplish the illegal objective. *People v. Mass*, 464 Mich. 615, 629; 628 NW2d 540 (2001). "What the conspirators actually did in furtherance of the conspiracy is evidence of what they agreed to do." *People v. Hunter*, 466 Mich. 1, 9; 643 NW2d 218 (2002). "[P]roof may be derived from the circumstances, acts, and conduct of the parties[.]" *Justice*, 454 Mich. at 347.

*Phlegm*, 2010 WL 2696678, at *9.

Petitioner was convicted of conspiring to commit armed robbery.  To convict him of armed robbery, the prosecutor had to prove that (1) Petitioner used force or violence against a person while committing a larceny and (2) he possessed a dangerous weapon, he possessed an article that would lead a person to believe that the article was a dangerous weapon, or he represented that he possessed a dangerous weapon. *People v. Chambers*, 277 Mich. App. 1, 7; 742 N.W.2d 610, 614 (2007).  The Michigan Court of Appeals reasonably determined in this case that,

> [a]lthough there was no direct evidence of an agreement to commit a robbery, there was circumstantial evidence that defendant Phlegm and at least two other men, codefendants Bard and Smith, agreed to use force or violence against at least Brown to commit a larceny.  The testimony of the sexual assault victim supported an inference that the defendants were parked in a vehicle outside Brown's house, lying in wait for him to return. Shortly after Brown returned, the defendants forcibly entered his house and made a demand for "work," which the sexual assault victim understood to be a reference to crack cocaine.  After the entry, the house was ransacked, consistent with the goal of committing a robbery.  The evidence that defendant Bard openly displayed a gun in the house, without objection by defendant Phlegm, also supports a reasonable inference that the conspiracy encompassed an armed robbery.  "A person may be party to a continuing conspiracy by knowingly co-operating to further the objective thereof." *Hunter*, 466 Mich. at 7.

*Phlegm*, 2010 WL 2696678, at *10.

15

There was additional evidence that the defendants took Cleveland Brown's clothes, his and Threlkeld's cell phones, and other items.  (Trial Tr. Vol. V, 135, 138-39, Aug. 5, 2008.)  Further, Petitioner informed David Phillips that he had provided drugs to the murder victims and that the victims did not pay him for the drugs.  (Trial. Tr. Vol. XI (a.m. session), 13-15, Aug. 14, 2008.)   A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner had agreed with his co-defendants to rob Brown and Threlkeld to compensate for the money that Threlkeld owed him.

A rational juror also could have concluded that Petitioner was armed during the robbery.  He was seen with a gun after the incident on Wilson Street (Trial Tr. Vol. IX, 27-28, 49-51, Aug. 12, 2008), and he apparently informed Edmund Stewart that the men in the house on Wilson Street were shot and got what they deserved.  He informed David Phillips that he had sold some drugs to Threlkeld and Brown and that Threlkeld and Brown were killed because Threlkeld had not paid him for the drugs.  He also informed Phillips that he shot two or three people and threw away his pistol before he was arrested.

The two casings and the fired bullet found in the car with the murder victims' bodies was consistent with the .40 caliber gun that Petitioner was seen carrying on the day of the murders.  (Trial Tr. Vol. VI, 257-59,  Aug. 7, 2008; Trial Tr. Vol. IX, 27-28, Aug. 12, 2008.)  Petitioner was known in his gang as the shooter (Trial Tr. Vol. IX, 18, 44, 97, Aug. 12, 2008), and Johnny Hodges claimed that he arranged to have someone dispose of Petitioner's and Bard's handguns after the murders.  (*Id.* at 63-65, 91-92.)

16

A rational juror could have inferred from all the evidence that Petitioner conspired to commit armed robbery and that he possessed a firearm during the commission of the robbery and the other crimes.

The Michigan Court of Appeals concluded that the evidence was sufficient to support Petitioner's conspiracy conviction and the associated felony-firearm conviction. This conclusion was not contrary to, or an unreasonable application of, *Jackson*. Petitioner therefore has no right to relief on the basis of his challenge to the sufficiency of the evidence.

### D.  The Prosecutor

The fourth and final habeas claim alleges that the prosecutor made an improper rebuttal argument regarding Petitioner's alleged consciousness of guilt.  The disputed remarks read:

> What was Defendant Phlegm doing when [the sexual assault victim] was on the witness stand?  He was moved from where he normally sat here to this seat over here, the furthest seat away from her.  The most concealed angle possible.  What was in front of Defendant Phlegm, when [the sexual assault victim] was on the stand?  The only witness he did this for, he had two of the banker-boxes, similar to the cardboard boxes we use that his attorney brought in and for once they weren't behind them, there were piled up on the table during her testimony only.  The consciousness of guilt was shown.  He's hiding the best he can, the furthest from her behind the two banker boxes while [the sexual assault] was on the stand.

(Trial Tr. Vol, XIII, 85-86, Aug. 19, 2008.)

According to Petitioner, there was no evidence that he was hiding behind banker boxes when the criminal assault victim testified and, therefore, the prosecutor ignored the long-standing rule that prosecutors may not state facts unsupported by the evidence produced at trial.  Petitioner further argues that, even if the prosecutor had made a

17

record of Petitioner's conduct at trial, it was irrelevant. Petitioner asserts that the prosecutor made up the theory of a consciousness of guilt and that any attempt to enhance the victim's credibility through this theory was improper.

The Michigan Court of Appeals reviewed this claim for "plain error affecting his substantial rights" because Petitioner did not object to the challenged remarks during trial. Consequently, Respondent argues that the claim is procedurally defaulted.

### 1. Procedural Default

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the petitioner failed to abide by a state procedural rule. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). A prisoner may obtain relief on a procedurally defaulted claim only if he or she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011), *cert. denied*, __ U.S. __, 133 S. Ct. 107, 184 L.Ed.2d 49 (2012)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

18

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

In Michigan, defendants in criminal cases are required to preserve their claims for appeal by first making an objection in the trial court. *People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-39 (1999). Petitioner violated this rule by not objecting to the prosecutor's conduct during trial. Thus, the first element of procedural default is satisfied.

The second element of procedural default is enforcement of a state procedural rule. The Michigan Court of Appeals was the only state court to adjudicate Petitioner's claim in a reasoned opinion. It reviewed Petitioner's claim for "plain error" affecting substantial rights because Petitioner failed to object at trial. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The second element of procedural default is satisfied.

The third element of procedural default requires determining whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts," *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011), and the Michigan Court of Appeals actually relied on the rule to foreclose relief. Consequently, the state court's ruling in

19

this case was an adequate and independent state ground for denying review of Petitioner's claim.

The fact that the Court of Appeals also addressed the merits of Petitioner's claim "does not require [this Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes,* 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id.* at 264 n.10.

To summarize, Petitioner violated a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Petitioner's federal claim. Federal habeas review of Petitioner's claim therefore is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner has not asserted "cause" for his procedural default, and, in the absence of cause and prejudice, a petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that the failure to consider [his claim] will result in a

fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence of actual innocence, and the evidence against him at trial was substantial. Therefore, a miscarriage of justice will not occur if the Court fails to address Petitioner's claim on the merits. His claim is procedurally defaulted and does not require an adjudication on the merits.

### 2. On the Merits

The Court finds for the following reasons that Petitioner would not be entitled to relief on his prosecutorial-misconduct claim even if it were not procedurally defaulted. The relevant question on review of a prosecutorial-misconduct claim is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

> In making this determination, [courts] must bear in mind that " 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.' " *Serra v. Michigan Dep't of Corrections* 4

F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209,
219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)); *see Pritchett v. Pitcher*, 117
F.3d 959, 964 (6th Cir.) (quoting *Serra*, 4 F.3d at 1355), cert. denied, 522
U.S. 1001, 118 S.Ct. 572, 139 L.Ed.2d 411 (1997). Therefore, even if the
prosecutor's conduct was "undesirable or even universally condemned,"
*Darden* [*v. Wainwright*, 477 U.S. 168, 181 (1986)] (quotation marks and
citation omitted), it does not constitute a due process violation unless "the
conduct was 'so egregious so as to render the entire trial fundamentally
unfair.' " *Pritchett*, 117 F.3d at 964 (quoting *Cook v. Bordenkircher*, 602
F.2d 117, 119 (6th Cir. 1979)); *see Darden*, 477 U.S. at 181, 106 S.Ct.
2464; *Serra*, 4 F.3d at 1355; *Angel v. Overberg*, 682 F.2d 605, 608 (6th
Cir. 1982) (*en banc*). Indeed, [Sixth Circuit] case law demonstrates the
"extreme nature of prosecutorial misconduct required for a federal court to
issue the writ." *Angel*, 682 F.2d at 609 (quoting *Cook*, 602 F.2d at 120).

*Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).

Petitioner claims there was no evidence that he was sitting behind banker boxes

when the sexual assault victim testified and that the prosecutor's reference to a

consciousness of guilt was not supported by the evidence produced at trial.

Prosecutors may not misrepresent the facts, nor assert facts never admitted in

evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). Here, however,

the sexual assault victim testified on re-direct examination by the prosecutor that she

was sure Petitioner, who was seated "behind the boxes," was the man who tied her up

the night of the crimes. (Trial Tr. Vol. V, 272, Aug. 5, 2008.) Consequently, the

prosecutor did not misrepresent the facts, nor assert facts never admitted in evidence.

His remarks were proper because they were tied to evidence that had already been

introduced, *Wogenstahl v. Mitchell*, 668 F.3d 307, 331 (6th Cir.), *cert. denied sub nom*

*Wogenstahl v. Robinson*, 133 S. Ct. 311 (2012), and they constituted "reasonable

inferences from the evidence." *United States v. Lawrence*, 735 F.3d 385, 435 (6th Cir.

2013), *cert. denied*, No. 13A1000, 14-5064, 2014 WL 3055715 (U.S. Dec. 8, 2014).

22

The Sixth Circuit has stated that a prosecutor's comment on a non-testifying defendant's demeanor or conduct at trial when observing a principal witness is irrelevant to the question of guilt or innocence. *Cunningham v. Perini*, 655 F.2d 98, 100 (6th Cir. 1981). But the Sixth Circuit also concluded in *Cunningham* that any error not fully corrected by a cautionary jury instruction does not rise to constitutional proportions. *Id.* at 101.

To the extent Petitioner is arguing that the prosecutor's remarks amounted to improper vouching for the sexual assault victim, his claim lacks merit, because improper

> "vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility [,] thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004) (internal quotation marks omitted). "Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Id.* at 607–08 (internal alterations and quotation marks omitted).

*United States v. Garcia*, 758 F.3d 714, 723 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 498 (2014).

The prosecutor's contested remarks in this case did not constitute vouching because, as the Michigan Court of Appeals recognized,

> [t]he prosecutor's rebuttal remarks were clearly directed at what the jury would see itself by looking at defendant Phlegm in the courtroom. The prosecutor did not imply any special knowledge concerning the victim's credibility by inferring that defendant Phlegm 'showed a consciousness of guilt.'

*Phlegm*, 2010 WL 2696678, at *11. The prosecutor, moreover, was "entitled to wide latitude in rebuttal argument," *Angel*, 682 F.2d at 607, and to fairly respond to defense counsel's closing argument and challenge to the sexual assault victim's identification of

Petitioner.

Finally, even if the Court had found that the contested remarks amounted to constitutional error, the remarks were not repeated, and they were a small part of a long trial where the evidence of Petitioner's guilt was substantial.  In the words of the Michigan Court of Appeals,

> [t]he critical issue at trial was the credibility of the victim's identification, not whether defendant Phlegm demonstrated a consciousness of guilt during the victim's testimony.  The prosecutor introduced evidence that the victim consistently identified defendant Phlegm at a corporeal lineup and in court proceedings.  Other evidence, including testimony by Hodges that placed defendant Phlegm in possession of the same type of gun used in the shooting, also linked defendant Phlegm to the crimes.  In addition, the trial court instructed the jury that the "lawyers' statements are not evidence," that it should decide the case based on the evidence, and "[e]vidence includes only the sworn testimony of witnesses, the Exhibits admitted into evidence and anything else I told you to consider as evidence."

*Phlegm*, 2010 WL 2696678, at *11.  Given the trial court's instructions and the strength of the evidence against Petitioner, the prosecutor's remark regarding consciousness of guilt could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Petitioner therefore has no right to relief on the basis of his fourth and final claim.

## IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  It certainly was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.  Accordingly, the

petition for writ of habeas corpus is **DENIED**.

## V. Regarding a Certificate of Appealability and *In Forma Pauperis* Status on Appeal

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

Date: December 31, 2014                    s/John Corbett O'Meara
                                           United States District Judge


I hereby certify that on December 31, 2014 a copy of this order was served upon the parties of record using the CM/ECF system, or by first-class U.S. mail.


                                           s/William Barkholz
                                           Case Manager